## WELLES *v.* LARRABEE *et al.*

*(Circuit Court, N. D. Iowa, E. D.  December 11, 1888.)*

1. BANKS — NATIONAL BANKS — INSOLVENCY — LIABILITY OF STOCKHOLDERS — PLEDGEES.

    A pledgee of shares of stock in a national bank, who does not appear, by the books of the bank or otherwise, to be the owner, is not liable for an assessment upon the shares on the insolvency of the bank, under Rev. St. U. S. § 5151, rendering shareholders liable for the debts of the association to the extent of the par value of their stock.

2. SAME—NAKED TRUSTEES.

    One to whom the shares are assigned in trust as security for a debt due a third person, and following whose name on the stock-book of the bank is the word "trustee," is not liable for the assessment under section 5151, and is also within the provision of section 5152, exempting from such liability persons holding stock as trustees.

At Law. On demurrer to the answer.

Action by E. P. Welles, receiver of the Commercial National Bank of Dubuque, against Frank Larrabee and the First National Bank of McGregor, to recover an assessment on shares of stock of the insolvent bank. Plaintiff demurs to the answer.

*Thomas Updegraff* and *William Graham,* for plaintiff.
*James O. Crosby,* for defendants.

SHIRAS, J. From the averments in the petition contained it appears that the Commercial National Bank was a corporation organized under the act of congress, doing business at Dubuque, Iowa; that on the 20th day of March, 1888, being insolvent, it ceased to do business, and the present plaintiff was duly appointed receiver thereof by the comptroller of the currency; that the liabilities were found to exceed the assets of the bank, and on the 25th day of July, 1888, the comptroller made an assessment upon the shares of the capital stock of said bank of 100 per cent. upon the par value thereof, the same to be paid by August 25, 1888; that on the 20th day of March, 1888, the defendant Frank Larrabee, as trustee for the defendant the First National Bank of McGregor, was the owner of 100 shares of the capital stock of said Commercial National Bank of the par value of $10,000, wherefore judgment is asked against both defendants for said sum of $10,000. To this petition the defendants answer, setting forth that previous to the 23d day of May, 1885, one J. K. Graves had become indebted to the First National Bank of McGregor in two loans of $5,000 each, evidenced by two promissory notes, and secured by the pledge of 100 shares of the capital stock of the Commercial Bank, the certificates being in the name of R. E. Graves, trustee, and by him assigned in blank; that on said 23d day of May, 1885, with a view to the extension of said loans, and for the securing the same, with the consent and by the direction of J. K. Graves, who was the real owner of said 100 shares of stock, the certificates named were surrendered to R. E. Graves, trustee, who was also president of the Commercial Bank, and a single new certificate of said 100 shares was issued to Frank Larrabee, trustee of the McGregor bank; that J. K. Graves has never paid his indebtedness to said McGregor bank; that said Larrabee has no interest whatever in said stock, but holds the same in trust for said J. K. Graves, and as collateral security for the payment of said indebtedness to the McGregor bank due from J. K. Graves, who is the real owner of said stock; and that beyond said certificate of shares he has no estate or funds pertaining to said trust, or belonging to said J. K. Graves. To this answer the plaintiff demurs, and counsel have very fully argued the questions thereby presented for determination.

So far as the defendant bank is concerned, the question resolves itself into this: Can the pledgee of stock in a national bank, who holds the same solely as collateral security for a debt due it from the real owner of the stock, be held liable for the assessments thereon, when the name of the pledgee as owner or holder of the shares has never appeared upon the books of the bank, or even upon the certificates of stock? As to the defendant Larrabee the question is: Can a person who is not the owner of the stock, and has no beneficial interest therein, be held liable for the assessments thereon by reason of the fact that the shares have been assigned to him to hold in trust, it appearing upon the proper books of the bank that he holds the same as trustee.

It may perhaps aid in reaching the true solution of these questions to state briefly some pi_.iciples which are fully recognized, touching the liability of stockholders and the grounds therefor.   One of the purposes of a corporation is to enable those interested therein as shareholders to limit their liability for the indebtedness of the corporation.   The statutes authorizing the creation of the particular corporation usually fix the limit of such liability.   In the case of national banks, the shareholders, in addition to being required to pay in the full amount of the stock subscribed for, are further liable, in case of need, for an amount equal to the face value of the stock held by them.   In enforcing this liability the first principle recognized is that the actual owner of the stock may be held liable for the assessment upon the shares owned at the time of the failure of the corporation.   This is upon the principle that the parties, who by reason of being the actual owners of the stock are entitled to the profits and benefits of the business carried on by the corporation, must respond to the burdens and debts up to the statutory limit.   In the enforcement of this liability against stockholders it is well established that the actual owners of the corporate stock cannot shield themselves against such liability by putting the title of the stock in the name of some irresponsible third party.   Creditors have the right to call upon the actual stockholders for contribution, and this right cannot be defeated by a merely colorable transfer of the legal title to some third party, who in fact holds the same for the benefit of the real owner of the stock.   Thomp. Liab. Stockh. § 215, *Johnson* v. *Laflin*, 5 Dill. 75; *McClaren* v. *Franciscus*, 43 Mo. 467; *Bank* v. *Seton*, 1 Pet. 302.

It is a further recognized principle that a party who permits himself to be held out upon the books of the corporation as a shareholder in fact will, in favor of creditors, be held to be such.   Parties dealing with a corporation have a right to assume that all persons shown by the books of the corporation to be stockholders, are bound for the liabilities of the corporation in the manner provided by the statutes under which the corporation is organized.   If, therefore, a person knowingly permits his name to appear upon the stock-books as a shareholder in fact, he will be estopped in favor of creditors from denying liability   *In re Bank*, 22 N. Y. 17; Thomp. Liab. Stockh. §§ 160, 161.   These general rules, and others deducible from the adjudged cases, are all based upon the foundation principle that the parties really interested as stockholders in corporations, and who as such are entitled to control and manage the affairs of the corporation, and to receive and enjoy the profits of the corporate business, are bound to respond to the liability imposed by the statute, when the business of the corporation has ceased to be profitable, and the ordinary assets are inadequate to meet the just demands of creditors.   The rights of creditors are fully met and protected if the statutory liability is enforced against all who are in fact stockholders in the insolvent corporation, and against all who have knowingly permitted their names to appear or continue upon the corporate books as stockholders in fact, under such circumstances as would justify third parties in assuming that they were stockholders.   There is no principle of law or equity which justifies the

holding a person liable as a stockholder in a corporation if in fact he is not one, unless he has knowingly permitted his name to appear as a stockholder, and thereby presumably misled parties dealing with the corporation. The liability sought to be enforced is purely statutory, and the declaration of the statute is that "the shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association to the extent of the amount of their stock therein at the par value thereof," etc. Section 5151, Rev St. To be liable, the party charged must be a shareholder, and by the construction placed upon these and similar provisions in other statutes it is held that the actual shareholder cannot escape liability by placing the legal title of his shares in the name of a third party, and that one who knowingly permits his name to be placed upon the corporate books as an owner of stock, or who permits it to continue thereon after he has in fact sold his stock, will be estopped from asserting that he is not a shareholder in favor of creditors who might otherwise be misled.

Applying these principles to the facts averred in the record of the present case, what is the result? So far as the defendant bank is concerned it is not averred nor claimed that its name ever appeared upon the books of the Commercial Bank as a shareholder, or that it ever held itself out in any way to be the owner in fact of the shares of stock upon which it is now sought to be made liable. There is nothing averred, therefore, that works an estoppel upon the bank, and it may be heard to assert that it is not the actual owner of the stock in question. On part of plaintiff it is argued that the facts averred in the answer show that the Mc-Gregor bank is the pledgee of the stock, and by reason of that fact must be held liable. If a person receives a transfer of stock, the legal title thereto being conveyed to him upon the corporate books, he becomes by his own act the apparent owner of the shares, and he cannot afterwards show, as against creditors, that in fact the transfer was by way of security only    *Hale* v. *Walker*, 31 Iowa, 344. *Wheelock* v. *Kost*, 77 Ill. 296; *Bank* v. *Burnham*, 11 Cush. 183; *Adderly* v *Storm*, 6 Hill, 624; *Pullman* v. *Upton*, 96 U. S. 328; *Bank* v. *Case*, 99 U S. 628. Some of the cases go to the extent of holding that, even if it appears on the corporate books that the stock is held in trust, and not absolutely, nevertheless the party in whose name it thus stands will be held liable. These cases seem to be based upon the assumption that the courts will disregard the addition of the word "trustee," and will hold the party to be on the face of the record the apparent legal owner of the stock. If this assumption is well taken, then the conclusion of liability is inevitable, under the rule that one who knowingly permits himself to appear as the legal owner of the stock upon the books of the corporation is estopped, in favor of creditors, from denying such ownership and the consequent liability. In these cases, however, the corporate books showed an assignment or transfer of the stock to the pledgee, and the true ground of liability in such cases, where it exists, is not because the pledgee is the owner in fact of the stock, for he is not, but the fact that the pledgee has received a transfer

of the stock in such form that the legal ownership appears to be in him, and by thus holding himself out as apparent owner he is estopped from showing the contrary. It will be borne in mind, however, that the shares of the stock pledged as a security for the debt of J. K. Graves to the McGregor bank were never carried on the books of the Commercial Bank in the name of the McGregor bank. The rule to be applied in such a case is found in *Anderson* v. *Warehouse Co.*, 111 U. S. 479, 4 Sup. Ct. Rep. 525, in which it is held that where stock in a national bank was transferred in good faith as security for a debt, and the legal title was placed in the name of an irresponsible third party, the pledgee could not be made liable for assessments upon such stock; it being held that the pledgee had a perfect right to thus take the stock as security for the debt due it, without making itself liable as the apparent owner thereof. In the case at bar, therefore, as the facts averred in the answer and admitted by the demurrer are that the McGregor bank never owned the stock of the Commercial Bank, and that its only interest therein was by way of security for a debt due from the actual owner of the stock, and it not appearing that the McGregor bank was ever held out or represented to be the owner of the stock in question, and as the legal title thereto never passed to the bank, it must be held that the answer, read in connection with the petition, presents a good defense to the action, and is not assailable by demurrer.

There is left, then, for consideration the question whether the facts appearing in the answer and petition constitute a defense for the defendant Larrabee. These facts are that he never was the beneficial owner of the shares of stock in question; that the same were assigned to him in trust by the actual owner, J K. Graves, to be held as security for the debt due the McGregor bank; and that, when the transfer on the books of the Commercial Bank was made to him, the character of the title and interest transferred to him was indicated by the addition of the word "trustee" thereto. Notwithstanding the ruling in some of the cases that such an addition is to be disregarded, the weight of authority accords with what on principle appears to be the common-sense construction of such a subscription. The word "trustee" is one of significance. It is constantly made use of, not only in legal phraseology, but in common speech, to indicate that one holds the title to property, not in his own absolute right, but for the benefit of some other party or parties. The fair and reasonable conclusion that all would reach, upon noticing the fact upon the stock-book of a corporation that certain shares of stock were held by A. B., trustee, would be that he held the same, not in his own right, but for the benefit of some other party. If the subscription upon the stock register was in the name of A. B., administrator or executor, could it be fairly said that persons dealing with the corporation would be justified in assuming that stock thus held was held by A. B. in his own right, and not in a representative capacity? Such words as trustee, administrator, and executor have a well-understood meaning, and, when attached to a name appearing upon the corporate books, are certainly sufficient to notify all that such shares of stock are held by the subscriber, not in his

own right, but in a representative capacity, thus putting those dealing with the corporation upon inquiry. Thus in *Shaw* v. *Spencer*, 100 Mass. 382, it is said that it is an erroneous assumption that the word "trustee" alone has no meaning or legal effect; that "the law holds that the insertion of the word 'trustee' after the name of a stockholder does indicate and give notice of a trust. No one is at liberty to disregard such notice, and to abstain from inquiry for the reason that a trust is frequently simulated or pretended when it really does not exist." In *Duncan* v. *Jaudon*, 15 Wall. 165, the supreme court cite this case of *Shaw* v. *Spencer* approvingly, saying:

"And the supreme court of Massachusetts in a recent case, in its essential features like the case at bar, decides that, if a certificate of stock expressed in the name of A. B., trustee, is by him pledged to secure his own debt, the pledgee is, by the terms of the certificate, put upon inquiry as to the character and limitations of the trust, and, if he accepts the pledge without inquiry, does so at his peril. In that case the *cestui que trust* was not named in the certificate, and the court remarked that, if it were so, the duty of inquiry would hardly be controverted. If these propositions are sound,—and we entertain no doubt on the point,—the liability of the appellants for the conversion of the stock belonging to Mrs. Jaudon cannot be an open question."

It is not necessary to cite further authorities in support of the proposition that the addition of the word "trustee" to the name of Frank Larrabee upon the stock certificate was sufficient to charge parties with notice that he held the stock, not as his own, but as a trustee. Indeed, counsel for plaintiff in their argument do not controvert this proposition, but argue that the word "trustee" only notified parties dealing with the bank of the real facts, to-wit, that Larrabee held the stock as pledgee, and as such is liable for the assessments. The facts, as pleaded in the answer, however, show that in fact J. K. Graves was the pledgeor, and the McGregor bank was the pledgee, and Larrabee was merely a trustee. There was no debt due him, nor could he in any way derive any benefit or advantage from the pledge. If Graves paid the debt due the bank, then it would become the duty of Larrabee to return the stock to Graves. If the debt was not paid, and the stock was sold for the payment thereof, then it would be his duty to pay the proceeds, or so much thereof as should be necessary to pay the debt, to the McGregor bank, returning the surplus to Graves. Larrabee is neither the actual owner of the stock, nor has he any beneficial interest therein as a pledgee or otherwise. His sole connection with the stock, according to the averments of the answer, was the taking and holding the title in trust for the real owner, Graves, subject to the claims of the McGregor bank as a creditor of Graves, and according to the averments of the petition he was a trustee for the benefit of the McGregor bank. Thus it appears that in fact Larrabee held the title of the stock as trustee only, and such fact appeared upon the face of the stock certificate; and by the express terms of section 5152 of the Revised Statutes it is declared that "persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders, but the estates and funds in their hands shall be liable," etc. Counsel for plaintiff argue that the trustees intended to

be exempted by this section are such only as, having funds in their hands for investment, have invested the same in stock of national banks, and that the exemption does not apply to cases where the trustee holds the naked legal title in trust for some third party; and in support of this proposition counsel cite Thomp. Liab. Stockh. §§ 179, 180; *Hoare's Case*, 2 Johns. & H. 229; *Stover* v. *Flack*, 30 N. Y. 64; *Wheelock* v. *Kost*, 77 Ill. 296; *Johnson* v. *Laflin*, 5 Dill. 75. These authorities are dealing with cases wherein the trust was a secret one, growing out of the relations of the parties. If, however, the trust is an express trust, and the fact that a trust exists appears upon the corporate books, what ground exists for holding that the statutory exemption does not apply? The statute provides that parties holding stocks as trustees shall not be personally liable, and, if the party has not estopped himself from showing that he holds the stock only as trustee, by permitting himself to be held out upon the corporate books as an owner of the stock in his own right, then it would seem clear that one who in fact holds the stock as trustee only is expressly exempted from personal liability. All that is necessary to be done to bring one within the terms of the statute is to show that the party holds the stock as trustee, and, this being shown, the exemption attaches. What good reason can be urged for holding that a person in whom the naked legal title of the stock is vested in trust merely, and who derives no benefit therefrom, and who has no funds or estate in his possession or under his control to which he might look for reimbursement, should be held personally liable for the assessments upon the stock thus held by him, when a trustee who has an estate or funds in his possession or under his control is expressly exempt from personal liability. If any distribution is to be made, it would be more in consonance with just principles to hold the trustee, having an estate or funds in possession, to which he might look for reimbursement, liable for the assessment; rather than one who holds merely a naked title.

If, however, the view taken by plaintiff's counsel of the meaning of section 5152 is correct, it does not follow that the defendant Larrabee is liable. The statutory liability does not attach to him unless he is a shareholder, and upon general principles it must be held that a mere naked trustee, who has no beneficial interest in the stock, but holds the title for the benefit of the real owner and parties in interest, the existence of such trust appearing upon the corporate books, cannot be held to be a shareholder within the meaning of section 5151 of the Revised Statutes. In the cases of administrators, executors, and trustees of that character, that there is no principal back of them, it might be argued with much force that they should be held liable as the owners of the stock, because the title vests in them, not as agents for some responsible principal, but as owners of the title, though bound to account for the proceeds thereof. To prevent liability from attaching to such administrators, executors, guardians, and trustees, section 5152 was enacted, but it is not a fair inference that, by enacting the exemption therein provided for, it was the intent to make liable as shareholders in fact parties who are not the real owners of shares, and who do not and cannot participate in the manage-

ment of the corporation, nor in the benefits and profits derived from the corporate business. As to such parties, the fundamental reason for liability to creditors fails. If it be sought to hold the defendant Larrabee liable because by a technical construction of the word "shareholder" he may be included within the same, as found in section 5151, then he has the right to insist that a similarly technical construction be placed upon the word "trustee," as used in section 5152, in which case he would be exempt simply because he comes within the language of the section. But, looking beyond the mere language used in those sections, or rather construing the same according to the true meaning and purpose thereof, it must be true that Larrabee can not be held liable under the provisions of section 5151, unless it appears that he is a shareholder in the defunct bank, or has held himself out as such. According to the averments of the answer he did not own the shares of stock assigned to him as trustee, and had no beneficial interest of any kind therein, nor could he derive any benefit therefrom. He had assumed the duties of a trustee for the owner or pledgor, Graves, and for the creditor or pledgee, the McGregor bank, but beyond the duties of such trusteeship he has no interest in the stock. He represents, on the one hand, the real owner of the stock, to whom creditors may look for the payment of the assessments; and on the other, the pledgee and creditor, and, occupying this position, he cannot be fairly or properly said to be a shareholder in the bank within the meaning of section 5151 of the Revised Statutes. Not being then a shareholder within the meaning of that section, or, if he be such, then being a trustee within the exception enacted in section 5152, he cannot be held liable for the assessments upon the stock held by him as trustee. The demurrer, therefore, to the answer must in favor of both defendants be, and the same is hereby, overruled.