### REUTER v. McCOOK et al.
### No. 8379.

Circuit Court of Appeals, Ninth Circuit.
Sept. 13, 1937.

Maguire, Shields & Morrison and Hugh L. Biggs, all of Portland, Or., for appellant.

Gavin & Gavin, of The Dalles, Or., and Wood, Matthiessen & Rankin, of Portland, Or., for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

GARRECHT, Circuit Judge.

This appeal is founded upon an action brought by the receiver of the First National Bank of The Dalles, Or., insolvent, against the appellant to enforce a stockholders' assessment, made July 5, 1935, by the Comptroller of the Currency of the United States, to the amount of 100 per cent. upon the par value of all stock of said bank, including 77½ shares held by the appellant, J. A. Reuter. The case was tried to the court, stipulation waiving jury having been duly filed. Judgment was entered in favor of appellee receiver.

The assignments of error do not question the correctness of the findings of fact, nor does the record contain a bill of exceptions. We are, therefore, limited in our inquiry to the question whether the findings of fact support the judgment. See O'Brien's Manual of Federal Appellate Procedure (2d Ed.) p. 12; and 1936 Cum. Supp. thereto, pp. 11–12.

In March, 1919, 50 shares of stock of the First National Bank of The Dalles, Or., were registered upon the books of said bank in the name of J. A. Reuter. In January, 1932, that bank consolidated with the Citizens National Bank of The Dalles, Or., under the name of the former. Upon consolidation 62½ shares of stock were issued to the appellant in exchange for the 50 shares previously held. The First National Bank had a capital stock of $200,000, divided into 2,000 shares of a par value of $100 each, all of which had been issued. December 24, 1932, the bank, being insolvent, voluntarily ceased business and a receiver was appointed. It appearing that the assets of the bank would be insufficient to discharge its obligations, the Comptroller of the Currency levied an assessment of 100 per cent. upon each share of stock.

At the time of closing of the bank the appellant had in his name upon the books of the bank 77½ shares of stock. At the trial appellant admitted that 15 of these shares belonged to him and he had paid the assessment thereon. On July 12, 1933, the receiver demanded payment of the assessment by August 12, 1933.

The trial court found that the remaining 62½ shares of stock, which the appellant had held continuously since March, 1919, were registered on the books of the bank as the absolute and exclusive property of the appellant. The court further found that prior to January, 1932, Reuter served as director of the First National Bank and that he then held 50 shares of stock; that "During that period of time Reuter qualified as director and took an oath of office to the effect that he was the absolute owner in good faith of the number of shares appearing on the record, * * * and that he swore under oath that he was the owner of 50 shares of stock, and there was at that time no other stock owned by him except that transferred to him by Naomi L. Schenck"; that the records of the bank showed that he acted as a shareholder for a period of 13 years; that he voted said stock, served as a director, and received dividends paid to him by the bank; that he cashed the dividend checks and deposited them in his individual account; that he made no request to the president or cashier of the bank to indicate on the list of stockholders his representative capacity as trustee.

The trial court concluded that the appellant was the owner of record of the 77½ shares of capital stock; that he was "estopped by reason of his representations and conduct to the effect that he was the owner of said 77½ shares of capital stock of said insolvent bank as made to the creditors of said bank, from claiming or alleging that he is the owner of any portion of said stock in a representative capacity only, to-wit, as trustee, and on the same grounds the defendant is estopped from denying that he is the owner of said stock as disclosed by the records of the said insolvent bank."

Judgment was entered July 16, 1936, in favor of plaintiff in the sum of $7,750 from

which judgment this appeal is taken. The assessment on 15 shares of stock has been paid by the appellant, leaving the assessment on 62½ shares in controversy.

On July 24, 1936, after the findings of fact and conclusions of law had been filed and judgment thereon entered, the trial judge, upon request of Reuter, made a purported additional finding of fact to the effect that Reuter held 62½ shares of stock in trust for the sole use and benefit of Naomi L. Schenck, which had been increased from 50 shares by the consolidation of the banks; that the president and the cashier of the First National Bank of the Dalles knew for a number of years that Reuter held the stock in trust for said Naomi L. Schenck and that she was receiving "the dividends, income and profits therefrom from the defendant periodically and regularly."

The applicable statutes are set forth in the margin.[1]

The appellant contends, first, that the statutory added liability imposed on stockholders of a national bank is limited to beneficial owners, but in clear cases may be extended by application of the doctrine of equitable estoppel to apparent owners not especially exempted by statute, and, second, that where the statute expressly exempts a trustee of national bank stock from personal liability for assessments thereon, he will not be estopped to claim the exemption by permitting his name to appear on the books of the bank as true owner thereof and by actively participating in the affairs of the bank. He argues that there was no finding of actual reliance upon the stock book entries by creditors; that creditors should be presumed to know that trustees were permitted to hold bank stock without personal liability; and that the statute does not require trustees to designate themselves upon the books of the bank as such.

The general rule of law applying to a state of facts such as these in the case before us has been well stated by the Circuit Court of Appeals for the Fifth Circuit in Rawlings v. Meredith, 80 F.(2d) 254, 256, 257: "It is well settled that a person who permits his name to appear and remain on a national bank's register as a shareholder is estopped, as between himself and the creditors of the bank, to deny that he is a shareholder. [Many cases cited.] The above-stated rule does not apply in the case of one whose name gets or remains on the books of a bank as a shareholder without his knowledge or consent, or who is incapable of binding himself as a bank shareholder. [Cases cited.] * * * The liability under an assessment against shareholders of a bank is one created by statute in favor of the bank's creditors, and cannot be modified or released by any action on the part of the bank. One, by allowing his name to appear on a bank's stock list as owner, represents that he is such owner, and he will not be permitted, after the bank fails, and when an assessment is made, to assume any other position as against the bank's creditors. [Cases cited.]"

The same court had previously said on this subject, in Schlener v. Davis, 75 F.

[1] 12 U.S.C.A. § 62: "The president and cashier of every national banking association shall cause to be kept at all times a full and correct list of the names and residences of all the shareholders in the association, and the number of shares held by each, in the office where its business is transacted. Such list shall be subject to the inspection of all the shareholders and creditors of the association, and the officers authorized to assess taxes under State authority, during business hours of each day in which business may be legally transacted. A copy of such list, on the first Monday of July of each year, verified by the oath of such president or cashier, shall be transmitted to the Comptroller of the Currency."

12 U.S.C.A. § 63: "The shareholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

12 U.S.C.A. § 64: "The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock."

12 U.S.C.A. § 66: "Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

(2d) 371, 373, 99 A.L.R. 498: "It is well settled that stock presumably belongs to him in whose name the shares stand on the stock books of the company. A list of the shareholders in a national bank, open to the inspection of the shareholders and creditors, is required to be kept in its business office. 12 U.S.C.A. § 62. One who knowingly allows the bank's records to show him as a shareholder becomes estopped to deny that he is such, *though he be in fact* an agent, *trustee,* pledgee, or dummy. The record owner of national bank stock, save in exceptional cases of fraud or inability to hold stock, is always assessable." (Italics our own.)

It was said in an earlier case, Lewis v. Switz, 74 F. 381, 382 (C.C.Neb.): "The demurrer to the answer admits the fact to be that the defendant is not the actual owner of the shares of stock standing in his name, but that he holds the same as a trustee for the bank. Section 5152 of the Revised Statutes [12 U.S.C.A. § 66] expressly enacts that 'persons holding stock as executors, administrators, guardians or trustees, shall not be personally subject to any liabilities as stockholders.' If, therefore, when the new certificates of stock were issued to the defendant, it had been made to appear upon the books of the bank that the defendant took the same, not in his own right, but as a trustee, he could not be held personally liable thereon. The averments of the answer show, however, that the character in which the defendant took the stock was not made to appear upon the bank records; but, on the contrary, the certificates were issued to him in his own name, and upon the books of the bank he was carried as the owner, in fact, of the stock. The general rule is well settled that, if a person knowingly permits his name to be entered upon the stock books of a national bank as the owner of stock therein, he cannot be permitted, as against creditors, to show that, in fact, he was not the owner. * * * The aver-

ments in the answer filed in this case show that the defendant consented to the transfer of the shares of stock to himself. He knew that the new certificates were issued in his own name, and he did not cause the books to show that he held the stock not in his own right, but as a trustee only. Under these circumstances he is liable to creditors, represented by the receiver, for the assessment levied on the stock. Demurrer sustained." See, also, Germania Nat. Bank v. Case, 99 U.S. 628, 631, 25 L. Ed. 448; Heiden v. Cremin (C.C.A.8) 66 F.(2d) 943, 947, 91 A.L.R. 247; Gamble v. Cumberland College (D.C.Ky.) 4 F.Supp. 767, 768; Horton v. Mercer (C.C.A.8) 71 F. 153; Welles v. Larrabee (C.C.Iowa) 36 F. 866, 2 L.R.A. 471.

The above authorities effectually dispose of the questions before us on appeal, both as to the liability of the record owner and the question of estoppel, and require that the judgment of the District Court be affirmed.

The appellant here is in no position to assert nonliability, for he swore he was the owner of the stock when he assumed office as a bank director; he voted the stock and accepted the dividends in his own name (although in a purported finding made after judgment it is said he paid them to Naomi L. Schenck). He did more than permit himself to be held out upon the corporate books as owner of stock, he affirmatively took an oath that he was such owner. The reasons for the application of the doctrine of estoppel are clear.

No cases cited by the appellant have convinced us that the rule is otherwise. In fact, many of the cases cited in appellant's brief actually support the rule. In Pauly v. State Loan & Trust Co., 165 U.S. 606, 619, 17 S.Ct. 465, 41 L.Ed. 844, the defendant was described in the insolvent bank's books as "Pledgee." Compare also Beal v. Essex Sav. Bank (C.C.A.1) 67 F. 816; Lucas v. Coe (C.C.N.Y.) 86 F. 972.

Judgment affirmed.