NATIONAL PARK BANK OF CITY OF NEW YORK v. HARMON.

(Circuit Court of Appeals, Second Circuit. April 8, 1897.)

NATIONAL BANKS—ASSESSMENTS UPON SHAREHOLDERS—PLEDGEE OF SHARES.

A corporation which receives shares of national bank stock in pledge, with power to use and sell, and which, in good faith, without suspicion of the bank's insolvency, causes new certificates to be issued in the name of one of its employés, merely because it is unwilling they should stand in the name of the original owners, remains a mere pledgee, and is not liable, as a shareholder, to assessment on the stock.

In Error to the Circuit Court of the United States for the Southern District of New York.

This was an action at law brought by the receiver of the Stock Growers' National Bank against the National Park Bank of the City of New York to recover an assessment made by the comptroller of the currency upon stockholders of the Stock Growers' National Bank. The trial judge ruled that the defendant was a shareholder, and directed a verdict for plaintiff. The defendant brings this writ of error.

Louis F. Doyle, for plaintiff in error.

Dayton, Dunphy & Swift, for defendant in error.

Before PECKHAM, Circuit Justice, and WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The question presented by the assignments of error is whether the defendant was, within the meaning of

section 5151 of the United States Revised Statutes, a stockholder of the Stock Growers' National Bank, a national banking association.

The Stock Growers' National Bank became insolvent in August, 1893; a receiver was appointed; and April 23, 1894, the comptroller of the currency, in virtue of the authority conferred upon him by law, made an assessment upon the stockholders of $100 upon each and every share of capital stock of the bank owned by them, respectively, at the time of its failure. This action was brought to recover the assessment upon 40 shares of the capital stock, which stood upon the books of the bank in the name of one Holbrook, upon the theory that Holbrook was merely the nominal, and the defendant was the real, stockholder, as to those shares.

It appeared upon the trial that the shares originally belonged to one Stebbins; he being the registered owner upon the books, and the bank having issued to him a certificate therefor. Stebbins pledged the certificate to Chrystie & Janney as collateral for a loan, with authority to them to use or sell the same, and indorsed thereon an assignment and transfer of the shares in blank, accompanied with a power of attorney to transfer the shares on the books of the bank. Subsequently, and on or about November 24, 1891, Chrystie & Janney pledged and delivered the certificate to the defendant as collateral security for the payment of a loan of $7,000 on demand. By the terms of the pledge the defendant was authorized, in case of nonpayment of the loan, to sell the shares, without notice, at public or private sale, and apply the proceeds to the payment thereof. July 6, 1892, the loan of Chrystie & Janney not having been paid, the defendant procured a transfer of the shares to be made on the books of the Stock Growers' National Bank to Holbrook; surrendering the certificate which had been pledged, and receiving from the bank a new one, showing Holbrook to be the owner of the shares. The new certificate, when received by the defendant from the Stock Growers' National Bank, was immediately indorsed in blank by Holbrook, and placed among the demand-loan collaterals of the defendant; and up to the time of the trial it had been held by the defendant as collateral to the loan of Chrystie & Janney, and Chrystie & Janney were paying interest upon the loan to the defendant. Holbrook was an employé of the defendant, was irresponsible, and had no interest in the transaction. The defendant caused the transfer to be made to him because it was unwilling to allow Stebbins to remain the registered owner of the shares, and desired to have them stand upon the books of the Stock Growers' National Bank in the name of its own employé, as registered owner. There was no evidence tending to show that the Stock Growers' National Bank was insolvent when this transaction took place, or that the defendant caused the transfer of the shares to be made from Stebbins to Holbrook because of any suspicion of the insolvency of the Stock Growers' National Bank. The defendant never received any dividends nor voted upon the shares. Upon these facts, we conclude that the defendant was not liable as a stockholder of the insolvent bank.

The adjudications of the supreme court are controlling authority for several propositions applicable to the case in hand, which are as fol-

lows: (1) The real owner of the shares of the capital stock of a national banking association may in every case be treated as a shareholder, within the meaning of section 5151. (2) Any person who holds himself out as the owner of the shares, by allowing himself to appear as the registered owner thereof upon the books of the banking association, may likewise be treated as a shareholder, within the meaning of that section. (3) If the real owner of the shares transfers them to another person, or causes them to be placed on the books of the banking association in the name of another person, with the intent simply to evade the responsibilities imposed by section 5151 on shareholders of national banking associations, such owner may be treated, for the purposes of that section, as a shareholder, and liable as therein prescribed. (4) If a person receives shares of the stock of a national banking association as collateral security to him for a debt due from the owner, with power of attorney authorizing him to transfer the same on the books of the association, and, being unwilling to incur the responsibilities of a shareholder as prescribed by the statute, causes the shares to be transferred on such books to another, under an agreement that they are to be held as security for the debt due from the real owner to the creditor,—doing so in good faith, and for the purpose only of securing payment of that debt without incurring the responsibility of a shareholder,—he will not be treated as a shareholder within the meaning of section 5151. The case of Pauly v. Trust Co. (recently decided by the supreme court) 17 Sup. Ct. 465, after reviewing previous decisions of the supreme court upon the general question, affirms the latter proposition.

In the present case the defendant never became the owner of the shares, but remained, as it always had been, merely the pledgee thereof, and, as was pointed out by the opinion in Pauly v. Trust Co., could not become the owner by selling the shares to itself because of its fiduciary obligation to exercise the right of sale for the benefit of the pledgors.

It follows that the trial judge erred in ruling that the defendant was a shareholder within the meaning of section 5151, and directing a verdict for the plaintiff.

The judgment is reversed.